## Henry E. Badger and Warren H. Badger

### v.

## Inlet Swamp Drainage District.

*Drainage— Sec. 28, Act of 1879—Contract by Commissioners—Removal of Dam—Lack of Funds—Practice.*

1. The defense of *ultra vires* can be made under the general issue.

2. Where it is provided that a legislative act shall be liberally construed, it is not proper to give it an unreasonable construction, or one contrary to its spirit or intent, or to give it such an interpretation as would embarrass or impede the attainment of the object sought.

3. In view of Sec. 28 of the Drainage Act of 1879, it can not be contended that commissioners may make contracts and do the work contemplated before any assessment has been made, unless money for the purpose is in their hands.

4. In the case presented, this court holds that there is nothing in the contention, that as plaintiffs had carried out their agreement to remove the dam in question, the defendant was estopped from refusing payment on equitable grounds.

[Opinion filed December 7, 1891.]

Appeal from the Circuit Court of Lee County; the Hon. John D. Crabtree, Judge, presiding.

Messrs. J. E. Lewis and A. K. Trusdale, for appellants.

Mr. A. C. Bardwell, for appellee.

Lacey, P. J. This suit was commenced by the appellants against appellee based on seventeen one hundred dollar orders given by appellee to appellants, directed to appellee's treasurer for payment, dated June 1, 1882. The orders were refused payment by the treasurer four or five weeks before the commencement of this suit.

It appears from the record that the district was formed October 11, 1879, under the act entitled, " An act to provide for the construction, reparation and protection of drains,

ditches and levees across the lands of others for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts. Approved and in force May 29, 1879."

A warrant was then issued for the assessment of damages and was sworn to November 6, 1879, and reported, and the assessment of benefits was confirmed November 24, 1879. The orders above given were drawn in consideration of an agreement made with the commissioners of appellee, or two of them, on the same date and time of the giving of the orders, and was a part of the same transaction whereby the commissioners agreed to pay the appellants $1,700 to remove their dam across Inlet Creek, the appellants agreeing to rebuild the same and remove the mason work, stone embankments and flume in connection with said dam, and the commissioners agreed to levy an assessment upon the lands in the appellee's district to pay appellants for removing the dam, etc., within sixty days. It was admitted that the dam had been removed, and that appellants had performed all their part of said agreement before the commencement of this suit. There was an assessment attempted of $1,800, to be made as provided for in the agreement, but nothing came of it, as it had been enjoined at the suit of a tax payer in the district against the county treasurer, it having been assessed for the purposes of paying for the removal of the dam in question—an illegal purpose—and no money was ever collected under it. At the time of the contract with the appellants, there was no money remaining under the first assessment and none on hand, and by the agreement it was contemplated that the consideration for the removal of the dam was to be paid out of an assessment thereafter to be made.

Two propositions were submitted to the court by appellants' counsel, to be held as law, which cover the substantial grounds of dispute; the others being a mere repetition in a different form, we will not notice, except one which asked the court to hold that appellee's defense could not be made under the pleadings. The propositions are as follows: "That the removal of the dam was a subject the said commissioners were

by law authorized to contract for, and issue orders for the amount agreed upon for the removal of the same," which proposition was refused by the court, but the court modified it by adding the words, "provided they had already levied an assessment to provide for the payment of the same."

The other proposition was as follows: "The said defendant, by receiving the benefit derived by the removal of said dam, is estopped to deny its liability to pay the orders given to the plaintiffs for its removal." This proposition was also refused by the court. The court then gave judgment in favor of appellee. From this judgment this appeal is taken.

It will be seen from the above statement, that the construction of the act under which the appellee was organized is involved. It is not contended by appellants' counsel that the drainage commissioners could make a contract in violation of the law, but that the statute authorized the issuing the orders and making of the contract prior to an assessment for that purpose, and that this power, expressly and also by implication, is given under Sec. 28 of the act. On the part of appellee it is insisted there is an entire want of power in the statute, properly construed, giving the commissioners power, expressly or by implication, to incur indebtedness prior to the assessment. A decision of the case therefore involves a construction of the statute in the respect in controversy here. There is contention between the parties as to whether the statute should have a strict or liberal construction. On the part of appellants it is insisted it should be liberally, and on that of appellee, strictly, construed. This question, however, we think, was settled by the legislature itself. In enacting a revision of the statute in 1885, it expressly provided in Sec. 34½, a new section added, as follows, viz.:

"This act shall be liberally construed to promote the ditching, drainage or reclamation of wet or overflowed lands," etc. Sess. Laws, 1885, 83. This, we think, the legislature intended to apply to the act originally passed as well as the enactment; therefore the authorities cited by appellee showing that there should be a strict construction of the act are not applicable. It will be seen by the act that whatever

there was in it tending to promote the reclamation of wet or overflowed lands, should have a liberal construction. This, however, would not require an unreasonable construction of the statute or one contrary to its spirit or intent, or to give it such an interpretation as would embarrass or impede the attainment of the object sought—the reclamation of the land. The appellants insist that the authority to make the contract in question is found in Sec. 28 of the Act, Sess. Laws, 1879, 128, which reads as follows: "Upon the organization of said drainage district, the commissioners so appointed shall from thenceforth have power to contract, and be contracted with," etc. * * * "and to do and perform in the corporate name of the said district, all such acts and things as shall be necessary for the accomplishment of this act." The contest is, that by this section the commissioners are given full power from the very organization of the district, to make all contracts in regard to the drains and levees, that it could do at any time after the assessment. We do not agree with this interpretation. Such an intention seems to us against the spirit and intent of the act.

The words, "to do and perform," etc., "all acts and things as may be necessary for the accomplishment of the purposes of this act," means to give the commissioners power to do those acts according to the terms and conditions of the Drainage Act, and at the time, and not before the proper time arrives. And furthermore it is not necessary for the accomplishment of the purposes of the act to make contracts at a time which is not granted to them by the act. It will be seen by Sec. 16 of the act, that upon the establishment of the drainage district before the county judge, and he shall have signed the order establishing it, that then the district shall be considered, and it is then, a body corporate and politic with the right to be sued, etc. It will be seen that this is before any jury is impaneled to make any assessment of damage and benefits, and before the confirmation of assessments. It would certainly be unreasonable to suppose that the legislature intended to give the commissioners the power to go ahead and make contracts and do the work contemplated before any

assessments had been made. Yet if the broad interpretation contended for by appellants is to be adopted, then the commissioners would have that power. Outside of that section there is no express grant of the power claimed. Besides this there are several clauses in different sections, especially the 36th and 38th, that clearly indicate that no such power is granted. In Sec. 36, where the commissioners are given the power to clear out dams and remove obstructions from artificial channels or streams, and other like obstructions outside the district by agreement with the owner, the further provision is made that they " may use any money in their hands arising from assessments for that purpose," etc. This is a clear intimation that they have no right to use any other funds than those mentioned; that is, they should not contract or pay for these things except they had money in their hands from such source. The rule of statutory construction that the mention of one mode of doing a thing is the exclusion of another, would seem to apply in this case. In Sec. 38 the commissioners are granted the power to borrow money on the unpaid assessment at the time of borrowing, not exceeding the amount of it, for the construction of any work which they are authorized to construct. This is another strong intimation that the district is not to be run in debt by contracts of the commissioners before the assessments are made and it is known what funds they have to invest.

It seems to us, in view of the limited power of the corporation in which, by the constitution, the assessment of lands can not be greater in the aggregate of all assessments than the amount of the benefits, it would be scarcely possible to suppose that the legislature intended to turn the commissioners loose as soon as the organization of the district was effected, and before it was known what amount of money they could realize by the assessment, to make unlimited contracts of the nature here claimed. The commissioners might not only embarrass the district by running it in debt for more than it could ever pay, but also endanger those who might give it credit; for in the end only the amount of the benefits accruing to the land, no difference how great the debts, could be collected. To do so,

it seems to us, would be clearly against public policy, and we can not think the legislature ever intended it; and such a power, it seems to us, can not be inferred from any necessary implication to carry out the provisions of the act.    In fact the powers would be more easily and advantageously exercised without it.    The power  to raise money for the purposes of drainage  by way of assessments of benefits is lodged by the constitution and  the act of incorporation in a  jury and the courts.    The commissioners' powers are given them to expend this money for the benefit of  the land owners, hence the propriety, and in  fact, the necessity of requiring  the money to be on hand, or at least assessed, before giving the commissioners the right of making  contracts in anticipation  of what might happen. .  The commissioners could not know for a certainty how much money  the jury would assess, therefore the impropriety of allowing them to make contracts largely exceeding  the power of fulfillment,' which would  no doubt often happen.    We must hold, then, that  the commissioners were without power to make the contract represented by the orders in question.

It is insisted by appellants that although there may have been a want of power in the commissioners to make  the contract, yet the appellee would be estopped from  refusing payment on equitable grounds, the appellants having performed their part of the contract.    There was, as we have seen, an entire want of power to make this contract, and the appellants must be presumed to have been as well aware of it as the appellee, and if they proceeded to fulfil the contract it was their own folly.    If such a plea as that could be allowed, the provisions of the law could always be violated with impunity.    If the law is to be upheld and the commissioners kept within their powers, public policy would prevent the allowance of an estoppel in a case like this.    It is for the public good that limitations of power in a case like this should be carefully maintained. It is not denied that the doctrine of estoppel *in pais* is often held applicable to municipal corporations as well as to private individuals and citizens; but the law is just at well settled that the public will not be estopped where justice and right does

not require it. Martel v. City of East St. Louis, 94 Ill. 67. We think in this kind of a case, neither justice nor right would require the doctrine of estoppel to be applied. To do so would be to circumvent the provisions of the Drainage Act. G. C. & S. R. R. Co. v. Spencer, 76 Ill. 192. The defense of *ultra vires* can be made under the general issue. Streeter v. Streeter, 43 Ill. 164.

For these reasons the judgment of the court below is affirmed.

*Judgment affirmed.*